UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MELANIE S. CALL,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SHC SERVICES, INC.,<br><br>　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [30] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-00283-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Defendant SHC Services, Inc.'s ("SHC") Motion for Summary Judgment.[1]

## BACKGROUND

On May 30, 2024, Plaintiff Melanie Call filed a complaint against SHC, her former employer.[2] In her Complaint, Ms. Call alleged various instances of family, sex, and disability discrimination against her during her employment at SHC, all leading to her resignation in November 2022.[3] She stated six causes of action: (1) interference under the Family and Medical Leave Act ("FMLA"), (2) retaliation under the FMLA, (3) disparate treatment and failure to accommodate under the Americans with Disabilities Act ("ADA"), (4) retaliation under the ADA, (5) sex discrimination under Title VII, and (6) retaliation under Title VII.[4] SHC challenges each cause of action in its Motion.[5]

---

[1] Mot. Summary Judgment "MSJ," ECF No. 30, filed Sep. 5, 2025.
[2] Compl., ECF No. 6, filed May 30, 2024.
[3] *See id.*
[4] *Id.* ¶¶ 43–96.
[5] *See* MSJ.

1

## STATEMENT OF FACTS

Ms. Call was hired by SHC as an assistant business analyst in 2017 and was supervised by Rodney Ekstrom.[6] In February of 2020, she was promoted to senior project manager, and Mr. Ekstrom remained her supervisor.[7] In April of 2021, Ms. Call informed Mr. Ekstrom that she was pregnant and would be taking FMLA maternity leave beginning the next month when her child was born.[8] Ms. Call testified that Mr. Ekstrom became angry that she had not told him sooner about her pregnancy and need for leave.[9] She reported the incident to Brett Johnson, the vice president of HR at the time.[10]

Ms. Call was on maternity leave for fourteen weeks.[11] She asserts that, when she returned, Mr. Ekstrom behaved "cold and distant" toward her.[12] He reduced her workload to a single project and compared her to her coworkers.[13] He also put up a job posting that had substantial overlap with Ms. Call's responsibilities for a new manager that would oversee her team.[14] After further discussions with Ms. Call and some interviews with potential candidates, he apologized and took the posting down.[15] Mr. Ekstrom also assigned a "shadow team" to work with Ms. Call on one of her projects, which Ms. Call stated was "pretty normal," but which made her feel that she was monitored differently than her peers.[16]

---

[6] Deposition of Melanie Call ("Call Depo.") 37:11–14, 38: 23–25, ECF No. 35–1, filed Oct. 18, 2025.
[7] *Id.* at 39:1–10, 43:7–9.
[8] Compl. ¶¶ 17–20.
[9] Call Depo. 60:15–23, 61:4–12.
[10] *Id.* at 62:9–17.
[11] *Id.* at 65:20–25.
[12] *Id.* at 66:3–5.
[13] *Id.* at 66:3–24.
[14] *Id.* at 66:6–16.
[15] *Id.* at 68:2–11.
[16] *Id.* at 59:1–12.

Sometime in the spring or summer of 2022, Ms. Call's supervisor changed from Mr. Ekstrom to Adrienne Nakamura.[17] Ms. Nakamura had been told about the timing of Ms. Call's pregnancy disclosure and leave request, and she talked about moving on from it and "rebuilding trust" with Ms. Call.[18] Ms. Call reports that Ms. Nakamura brought up the pregnancy disclosure situation multiple times with her.[19] Ms. Call was upset that Ms. Nakamura had been told about and kept mentioning the disclosure incident, and she had "numerous conversations" with Mr. Johnson from HR about how she felt disadvantaged.[20]

About two weeks before Ms. Call resigned, one of her co-workers quit, leaving Ms. Call to take on an additional workload.[21] Ms. Call states that she felt overwhelmed with this additional work.[22] Ms. Nakamura also yelled at Ms. Call on one occasion during a one-on-one review because Ms. Call had not memorized her notes during a weekly meeting that had occurred earlier.[23] This was the only time Ms. Nakamura ever yelled at Ms. Call.[24] Ms. Call was never formally disciplined at SHC.[25]

Sometime in early November 2022, Ms. Call made several requests to Ms. Nakamura over the phone and on Zoom to use some of her PTO to see a doctor.[26] Ms. Call reports that she explained how she felt overwhelmed and might have postpartum depression without knowing

---

[17] *Id.* at 43:7–17.
[18] *Id.* at 57:1–19.
[19] *Id.*
[20] *Id.* at 57:25–58:17.
[21] *Id.* at 55:8–25.
[22] *Id.*
[23] *Id.* at 54:9–23.
[24] *Id.* at 64:1–7.
[25] *Id.* at 45:12–19.
[26] *Id.* at 48:18–49:9.

about it.[27] Ms. Nakamura said that these requests could not be granted because there was nobody to cover Ms. Call's work.[28] Ms. Call did not submit a formal request at this time.[29]

On November 9, 2022, Ms. Call submitted her notice of resignation.[30] She also submitted an official request to use her PTO either on the day she gave her notice or two weeks later on the last day she worked.[31] This request was granted.[32]

Ms. Call was not diagnosed with depression during her time at SHC.[33] During her employment, she thought that she might have depression that developed because of her work environment.[34] Ms. Call testified that she "was hardly sleeping" because of her heavy workload by the end of her time at SHC.[35] She also testified that she did not have a disability while she was at SHC and that she was a "normal functioning human being."[36]

## STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[38] The movant "bears the initial burden of making a prima facie demonstration of the

---

[27] *Id.* at 50:7–20.
[28] *Id.* at 49:7–12.
[29] *Id.* at 52:1–3.
[30] Compl. ¶¶ 35–36.
[31] Call Depo. 52:4–20, 79:19–80:7.
[32] *Id.*
[33] *Id.* at 47:2–3.
[34] *Id.* at 46:20–25, 47:14–16.
[35] *Id.* at 79:19–21.
[36] *Id.* at 47:9–14.
[37] Fed. R. Civ. P. 56(a).
[38] *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1169 (10th Cir. 2021) (citation omitted).

absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[39] When viewing the record, the court "draw[s] all reasonable inferences therefrom most favorably to the nonmovant."[40]

## DISCUSSION

SHC moves for summary judgment on each of Ms. Call's six causes of action.[41] In her Opposition, Ms. Call concedes that summary judgment is warranted on her FMLA interference claim, her ADA disparate treatment claim, and her Title VII discrimination claim.[42] She opposes summary judgment on the remaining causes of action.[43]

### I. FMLA Retaliation

Under the FMLA, eligible employees are entitled to take twelve weeks of leave per year for qualifying reasons, including the birth of a child.[44] The FMLA also makes it unlawful for employers to "discharge or in any other manner discriminate against" their employees for exercising their rights under the statute.[45] "Retaliation claims under the FMLA are subject to the burden-shifting analysis" set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[46] "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation."[47] To state a prima facie case of FMLA retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) the employer took an adverse employment action

---

[39] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[40] *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (citation omitted).
[41] *See* MSJ.
[42] Opp'n to Mot. Summary Judgment ("Opp'n") 15, 21, 23, ECF No. 35, filed Oct. 18, 2025.
[43] *See id.*
[44] 29 U.S.C. § 2612(a)(1).
[45] 29 U.S.C. § 2615(a)(2).
[46] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 802–04 (1973)).
[47] *Id.*

5

against her, and (3) there is a causal connection between the protected activity and the adverse employment action.[48]

### 1. Protected Activity

The first element is met when an employee takes FMLA leave.[49] Ms. Call met this requirement when she took FMLA maternity leave in 2021.[50] Ms. Call also argues that her informal and formal requests for time off in November 2022 could be found to be requests for FMLA leave.[51] However, the court need not decide if these requests constitute FMLA leave requests because, even if they are, they cannot be causally connected to the adverse employment action Ms. Call alleges.

Ms. Call alleges that she was forced to resign, or was constructively discharged, due to intolerable conditions at SHC.[52] But, while Ms. Call's resignation followed the denial of her informal time-off requests in November 2022, the events that she claims made continued employment intolerable preceded those requests.[53] SHC argues, and Ms. Call agrees, that the "simple denial of a request for FMLA leave is not an adverse employment action."[54] Therefore, even if Ms. Call's November 2022 PTO requests were protected FMLA activity, they could not have caused the intolerable conditions that allegedly led to her constructive discharge. Regardless, Ms. Call has satisfied the first element of her prima facie case through her 2021 maternity leave.

---

[48] *Id.* at 1171.
[49] *Id.*
[50] Call Depo. 65:16–25.
[51] Opp'n 16.
[52] *Id.* at 18–19; Compl. ¶ 57.
[53] *See* Opp'n 17–19.
[54] *Id.* at 17.

2. *Adverse Employment Action*

"In general, only acts that constitute a significant change in employment status," like termination or removal of benefits, will qualify as an adverse employment reaction.[55] "[M]ere inconvenience or an alteration of job responsibilities does not constitute an adverse employment action."[56] Ms. Call does not provide any evidence that she was fired, had her benefits reduced, or experienced a significant change in her job responsibilities. However, she argues that she satisfies this element because she was constructively discharged.[57]

"Constructive discharge occurs when an employer unlawfully creates 'working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.'"[58] "The standard is objective: the employer's subjective intent and the employee's subjective views on the situation are irrelevant."[59] The Plaintiff's burden in showing constructive discharge is substantial.[60] However, the existence of constructive discharge is a question of fact, so the court should only rule on the issue as a matter of law "if the evidence is susceptible to but one interpretation."[61]

When bringing a claim of constructive discharge, "an employee cannot survive summary judgment merely by producing evidence showing that working conditions were difficult or unpleasant."[62] Instead, a plaintiff "must show that, at the time of [her] resignation, [her]

---

[55] *Ford v. Brennan*, No. 2:15CV00539-BSJ, 2018 WL 11341632, at *4 (D. Utah Aug. 27, 2018), aff'd, No. 21-4086, 2023 WL 5606233 (10th Cir. Aug. 30, 2023).
[56] *Id.* (quoting *E.E.O.C. v. C.R. England, In*c., 644 F.3d 1028, 1042–43 (10th Cir. 2011)).
[57] Opp'n at 17.
[58] *Strickland v. United Parcel Serv., Inc.,* 555 F.3d 1224, 1228 (10th Cir. 2009) (quoting *Fischer v. Forestwood Co.,* 525 F.3d 972, 980 (10th Cir.2008)).
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Fischer v. Forestwood Co.,* 525 F.3d 972, 981 (10th Cir. 2008).

employer did not allow [her] the opportunity to make a free choice regarding [her] employment relationship."[63] "Essentially, a plaintiff must show that she had *no other choice* but to quit."[64] "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."[65] Thus, the question in constructive discharge cases is "not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions."[66]

This is a high bar to meet. In this case, Ms. Call contends that a reasonable employee could view her situation as objectively intolerable.[67] Not so. Ms. Call provides evidence that she (1) was yelled at a single time by her manager for reading notes in a meeting, (2) was repeatedly reminded of her failure to provide more notice before taking maternity leave, (3) was given insufficient work after her leave and was later given too much work by another manager when a coworker quit, (4) became afraid for her position when a job posting with overlapping responsibilities was posted by her manager, and (5) had several informal requests for PTO denied.

Considering the totality of these circumstances, the evidence at most shows a difficult or unpleasant work environment. Ms. Call may have felt overwhelmed with her workload and anxious about her managers' "unprofessional" behavior,[68] but constructive discharge requires an

---

[63] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).
[64] *Rivero v. Bd. of Regents of Univ. of New Mexico*, 950 F.3d 754, 761 (10th Cir. 2020) (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998)) (emphasis in original).
[65] *Id.* (quoting *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005)).
[66] *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 806 (10th Cir. 2007) (quoting *Tran v. Trs. of State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004)).
[67] Opp'n 19.
[68] Call Depo. at 55:8–56:14.

8

objective showing. Here, the evidence is only susceptible to one reasonable interpretation, that Ms. Call voluntarily quit what she felt was an unpleasant work environment. The evidence is insufficient to show that the situation was so objectively intolerable that a reasonable person would have had no "free choice" but to quit.[69] Because the evidence cannot reasonably support a claim of constructive discharge, Ms. Call does not meet her prima facie burden of showing an adverse employment action.

### 3. Causal Connection

To state a prima facie case of retaliation, Ms. Call must also show that "there exists a causal connection between the protected activity and the adverse [employment] action."[70] "The 'critical inquiry' at this prima facie stage is 'whether the plaintiff has demonstrated that the employer's action occurred under circumstances which give rise to an inference of unlawful discrimination.'"[71] The Tenth Circuit has said that "temporal proximity between protected conduct" and the adverse employment action can be sufficient to "justify an inference of retaliatory motive."[72] For example, a period of four to six weeks between protected activity and an adverse employment action is a close enough connection to establish a retaliatory inference,[73] but a period of three months is too long to establish such an inference standing alone.[74] When a

---

[69] *See Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1135 (10th Cir. 2004) ("Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship.").
[70] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).
[71] *Id.* (quoting *Garrett v. Hewlett–Packard Co.,* 305 F.3d 1210, 1221 (10th Cir. 2002)).
[72] *Id.*
[73] *Id.* at 1171–72.
[74] *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997).

plaintiff is relying on temporal connection, the question is whether the adverse employment action was "very closely connected in time."[75]

Here, Ms. Call claims she was constructively discharged because a pattern of employer behavior made her continued employment intolerable.[76] When evaluating temporal proximity and causation for a constructive discharge claim, "the relevant time frame is not when the constructive discharge occurred, but when the conduct leading up to the discharge began."[77] Therefore, to make a prima facie showing that her termination was causally connected to her maternity leave in May 2021, she must show that the intolerable employment conditions were created in retaliation for that leave. Temporally, many of the events Ms. Call complains of, like her increased workload in November 2022, her PTO denials, and her interactions with Ms. Nakamura, occurred more than a year after she returned from her maternity leave.[78] This is far too long of a delay to establish any retaliatory inference standing alone.[79]

For many of the allegedly intolerable conditions, there is no additional evidence connecting them in any way to her FMLA leave the previous year. Ms. Call testified that she was yelled at because she read notes during a meeting,[80] that she had an unusually heavy workload because a coworker had just quit,[81] and that her PTO requests were denied because nobody could cover her work.[82] Plaintiff fails to provide evidence suggesting that these incidents were retaliation for her taking maternity leave in May 2021.

---

[75] *Metzler*, 464 F.3d at 1171 (cleaned up).
[76] Opp'n 17–19.
[77] *Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 717 F.3d 1121, 1137 (10th Cir. 2013).
[78] Call Depo. 54:9–56:14.
[79] *See Metzler*, 464 F.3d at 1171–72.
[80] Call Depo. 54:12–23.
[81] *Id.* at 55:8–20.
[82] *Id.* at 49:7–17.

As already discussed, Ms. Call does not provide sufficient evidence to reasonably suggest that she was constructively discharged even when considering the totality of the circumstances. And most of the circumstances that immediately preceded her decision to quit have no evidence tying them to her earlier leave. Therefore, Ms. Call fails to meet her burden of establishing a prima facie case of FMLA retaliation.

## II.    ADA Failure to Accommodate

The ADA prohibits discrimination against an individual on the basis of a disability.[83] Discrimination under the ADA includes a failure to reasonably accommodate the known limitations of an otherwise qualified disabled individual.[84] To establish a claim for failure to accommodate under the ADA, plaintiff must first "make an initial showing that (1) she is disabled; (2) she is otherwise qualified; and (3) she requested a plausibly reasonable accommodation."[85] If an employer grants a requested accommodation, the employer cannot be liable for failure to accommodate.[86]

Additionally, the ADA establishes a 300-day statute of limitations for charges of an unlawful employment practice that are filed with a state agency.[87] Here, Ms. Call filed her charges with the Utah Anti-Discrimination and Labor Division (UALD) and the EEOC on

---

[83] 42 U.S.C. § 12112(a).
[84] 42 U.S.C. § 12112(b)(5)(A).
[85] *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)).
[86] *Nunez v. Lifetime Prods., Inc.*, No. 1:14-CV-00025, 2016 WL 11189807, at *5 (D. Utah Sept. 13, 2016*), report and recommendation adopted sub nom. Nunez v. Lifeetime Prods., Inc.*, No. 114CV00025RJSPMW, 2017 WL 1493679 (D. Utah Apr. 26, 2017), *aff'd sub nom. Nunez v. Lifetime Prods., Inc.,* 725 F. App'x 628 (10th Cir. 2018).
[87] 42 U.S.C. § 2000e-5(e)(1).

September 5, 2023.[88] Any claims based on events occurring earlier than 300 days before this date (earlier than November 9, 2022) are therefore barred by statute.

Ms. Call made several informal requests to use PTO prior to resigning in November 2022.[89] Although the exact date of these requests is not clear on the record, Ms. Call concedes that they occurred prior to November 9, 2022 and are barred by the statute of limitations.[90] Ms. Call also made a formal PTO request either on November 9, 2022 when she submitted her resignation or two weeks later on her last day.[91] The parties do not dispute that this formal request fell within the 300-day statute of limitations.[92]

Under the ADA, the term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities."[93] SHC argues that Ms. Call cannot establish a prima facie claim under the ADA because she was not diagnosed with depression until after her employment ended and testified that she did not have a disability while working at SHC.[94] Ms. Call argues she has presented sufficient evidence to show that she had a disability while employed, including her comments that she "could have depression."[95]

The court need not resolve this dispute because it is clear from the record that Ms. Call's request for time off on or after November 9, 2022, was granted.[96] There can be no claim for failure to accommodate when the requested accommodation is granted. Because Mr. Call's

---

[88] EEOC Complaint, ECF. No. 31-2, filed Sep. 5, 2025.
[89] Call Depo. 48:18–49:9.
[90] Opp'n 20.
[91] Call Depo. 52:4–20, 79:19–80:7.
[92] Reply 9.
[93] 42 U.S.C. § 12102(1)(A).
[94] MSJ 18–19; Call Depo 47 12:9–16.
[95] Opp'n 21; Call Depo 46:16–25.
[96] Call Depo. 52:4–8, 79:24–80:7.

earlier informal requests are time-barred, only her final, formal request could be the basis for her ADA claim. She testified multiple times that the final request was granted, so her ADA failure to accommodate claim fails as a matter of law.

### III. ADA Retaliation

To establish a prima facie case of ADA retaliation, Ms. Call must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.[97] In this case, Ms. Call argues that she engaged in protected activity by formally requesting leave on or after November 9, 2022.[98] She claims that her subsequent resignation qualified as a constructive discharge in retaliation for this request.[99]

As already discussed, the evidence on record cannot be plausibly interpreted as creating an objectively intolerable environment sufficient to qualify as a constructive discharge. The ADA retaliation claim fails on this element alone. Furthermore, Ms. Call made her request for time off either at the same time she tendered her resignation or after she gave her notice. It is impossible for any of the events she says made her work environment intolerable to have occurred in retaliation for her request because they all preceded it. Even if the evidence did support a constructive discharge claim, that discharge could not have been in retaliation for an accommodations request that occurred after the situation had already become intolerable.

### IV. Title VII Retaliation

---

[97] *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (*quoting Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)).
[98] Opp'n 22; Compl. ¶ 76.
[99] Opp'n 22.

"Title VII forbids retaliation against employees who voice opposition to . . . an unlawful employment practice by [their] employer."[100] In order to establish a prima facie Title VII retaliation claim, an employee must demonstrate that "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between her opposition and the employer's adverse action."[101] For an employee activity to qualify as protected opposition to discrimination, the employee must make some sort of complaint about prohibited discrimination.[102]

In her Complaint, Ms. Call alleges that she "engaged in protected activity" by "requesting reasonable accommodations."[103] But an accommodations request is not a complaint regarding discrimination. In this case, the accommodations request was not even related to Ms. Call's sex. Ms. Call pivots in her Opposition brief and argues that her complaints to Mr. Johnson in 2022 qualify.[104] Even assuming without deciding that these complaints to HR could qualify as protected activity, this claim also fails on the adverse employment action and causation prongs.

While Ms. Call's Complaint does not describe the nature of the alleged retaliation she experienced,[105] she argues in her Opposition brief that she was constructively discharged in retaliation.[106] As already discussed, Ms. Call's evidence is legally insufficient to support a claim of constructive discharge. Furthermore, to show causation for a Title VII retaliation claim, a plaintiff must first demonstrate that "those who decided to take adverse action against him had

---

[100] *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007); 42 U.S.C. § 2000e-3(a).
[101] *Id.*
[102] *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019).
[103] Compl. ¶ 91.
[104] Opp'n 23.
[105] Compl. ¶ 92.
[106] Opp'n 24.

14

knowledge of his protected activity."[107] Here, the complaints to Mr. Johnson occurred after all of Mr. Ekstrom's actions against her, and Ms. Call fails to identify evidence suggesting that Ms. Nakamura was aware of Ms. Call's complaints to Mr. Johnson. Thus, Ms. Call fails to establish either an adverse employment action or a causal connection.

## ORDER

SHC's [30] Motion for Summary Judgment is GRANTED.

---

[107] *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019).

Signed January 21, 2026.

BY THE COURT

_____
David Barlow
United States District Judge